**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

DOUGLAS C. ASHWORTH,  )
  )
  Petitioner,  )
  )
vs.  )  **Case No. 10-CV-609-TCK-FHM**
  )
JAMES RUDEK, Warden,  )
  )
  Respondent.  )

**OPINION AND ORDER**

Before the Court is the petition for writ of habeas corpus (Dkt. # 2) filed by Petitioner

Douglas C. Ashworth, a state inmate represented by counsel. Petitioner also filed a brief in support

of his petition (Dkt. # 9). Respondent filed a response (Dkt. # 14) and provided the state court

records (Dkt. ## 14, 15, and 16) for the Court's use in adjudicating Petitioner's claims.  Petitioner

filed a reply (Dkt. # 19).  At the Court's direction, <u>see</u> Dkt. # 20, counsel for Petitioner supplemented

the record to provide a complete copy of Petitioner's application for post-conviction relief. <u>See</u> Dkt.

# 21. For the reasons discussed below, the petition for writ of habeas corpus shall be denied.

***BACKGROUND***

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts found by the state court are presumed

correct. The Oklahoma Court of Criminal Appeals (OCCA) provided a summary of the facts in its

unpublished direct appeal opinion. Following review of the record, including the trial transcripts,

the Court finds the factual summary by the OCCA is adequate and accurate. Therefore, the Court

adopts the following summary as its own.

> On December 8th, 2005, Douglas Ashworth shot and killed Adriane Barker.
> Earlier that morning, Steven McIntosh had arrived at Ashworth's house to find the
> garage door open but no car inside. Barker apparently let McIntosh into the house,
> where the two waited for Ashworth to waken. He noted Debra Bowline and Renee
> Barnes asleep in the living room.

After Ashworth was awakened and McIntosh had apprised him of the situation, Ashworth went to the garage and became irate over the absence of his Nissan Pathfinder. He immediately began accusing Barker of aiding the thieves and pointed a shotgun at her. Barker's insistence that she was innocent was met with Ashworth's screams that she was a liar and had to "shut up." McIntosh asked Barker to leave and tried to calm Ashworth. Bowline also urged Barker to pack and leave the house. Barker refused.

After a private conversation in the office, Ashworth and McIntosh emerged and went to [the] living area, with Ashworth now carrying a pistol. Barker again proclaimed her innocence and her love for Ashworth, and Ashworth again became irate and vitriolic toward Barker. He pivoted, pointed the gun three to four inches from Barker's temple, and pulled the trigger. Barker fell dead to the floor in front of Ashworth, McIntosh, Bowline, and Barnes.

Ashworth then proceeded to conceal the shooting. First, he wrapped Barker's body in a throw rug and stuffed it into a crawl space. He next enlisted the aid of two men, who thought they were working with a methamphetamine lab, to dispose of the body. One of these men later led officers to where they had dumped the body in the Verdigris River.

(Dkt. # 14, Ex. 5 at 1-2).

Based on those events, Petitioner Douglas Ashworth was charged with First Degree Murder or, in the alternative, Second Degree Felony Murder (Count 1), Kidnapping (Count 2), and Unlawful Removal of a Dead Body (Count 3), in Tulsa County District Court, Case No. CF-2006-03. Petitioner proceeded to be tried by a jury. At the conclusion of the trial, the jury found Petitioner guilty of Counts 1 and 3, but acquitted him of Count 2. On June 11, 2007, in accordance with the jury's recommendations, the trial judge sentenced Petitioner to life imprisonment without the possibility of parole on Count 1 and to five (5) years imprisonment on Count 3, to be served consecutively. At trial, Petitioner was represented by attorney Larry Edwards.

Petitioner appealed his convictions and sentences to the OCCA. Represented by attorney Sandra Mulhair Cinnamon, Petitioner raised five (5) propositions of error, in OCCA Case No. F-2007-605, as follows:

2

| | |
|---|---|
| Proposition I: | The evidence is insufficient to support Mr. Ashworth's conviction for malice aforethought murder. |
| Proposition II: | Mr. Ashworth was denied his right to a fair trial when the court failed to give the correct and pertinent instructions stating the applicable law. |
| | A.   Mr. Ashworth was denied his right to present a defense because the jury instructions were confusing and did not state the applicable law. |
| | B.   The trial court issued instructions that were confusing to the jury. |
| | C.   The trial court failed to give relevant instructions. |
| | D.   Conclusion. |
| Proposition III: | Mr. Ashworth received ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and Article 2, Section 20 of the Oklahoma Constitution. |
| Proposition IV: | Prosecutorial misconduct deprived Mr. Ashworth of his right to a fair trial. |
| Proposition V: | The accumulation of errors in this case so infected the trial with unfairness that Mr. Ashworth was denied due process in violation of the Fifth and Fourteenth Amendments. |

(Dkt. # 14, Ex. 1). Petitioner also filed an application for evidentiary hearing on his Sixth Amendment claims of ineffective assistance of counsel. See Dkt. # 14, Ex. 2. In addition, the docket sheet for Case No. F-2007-605 shows that Petitioner filed a motion for new trial. See www.oscn.net. On August 27, 2008, the OCCA denied Petitioner's application for evidentiary hearing and motion for new trial, and affirmed the Judgments and Sentences entered by the trial court. See Dkt. # 14, Ex. 5.

Upon conclusion of his direct appeal, Petitioner filed a pro se motion for suspended sentence in the trial court. On September 30, 2008, the trial judge held a hearing on the motion and denied the requested relief.  See Dkt. # 21, Ex. 3, Trans. Mot. Hr'g. Although the motion was filed pro se, Petitioner was represented at the hearing by attorney James L. Hankins.  Id.

3

On November 25, 2009, Petitioner filed an application for post-conviction relief in the state district court. See Dkt. # 21. Represented by attorney Hankins, Petitioner raised claims of ineffective assistance of trial and appellate counsel. Id. By Order filed January 28, 2010, the state district judge denied the application.  See Dkt. # 14, Ex. 7. Petitioner appealed.  On September 24, 2010, in Case No. PC-2010-168, the OCCA affirmed the denial of post-conviction relief. See Dkt. # 14, Ex. 10.

Petitioner commenced the instant habeas corpus action by filing his petition on September 24, 2010.  See Dkt. # 2. Continuing to be represented by attorney Hankins, Petitioner filed a supporting brief (Dkt. # 9) on December 20, 2010. In his supporting brief, Petitioner identifies his grounds of error as follows:

Ground 1:     Ashworth received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution at both the trial and appellate levels of the proceedings because neither lawyer developed evidence to support his theory of defense that on the morning of the homicide of Adriane Barker his home was being robbed and that he shot Barker accidentally.

Ground 2:     The evidence presented by the State against Ashworth was insufficient to sustain the verdict of guilty beyond a reasonable doubt as to the conviction of premeditated murder.

Ground 3:     Instructional error resulted in a fundamentally unfair trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

Ground 4:     Ashworth was denied the effective assistance of counsel when trial counsel failed to present evidence at the hearing to supplement the record in support of his motion to suppress evidence in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

Ground 5:     Prosecutorial misconduct deprived Ashworth of his right to a fundamentally fair trial in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution.

Ground 6:     The cumulative effect of the errors at trial deprived Ashworth of a fundamentally fair trial in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution.

4

(Dkt. # 9).  In response to the petition, Respondent argues that Petitioner's claim of ineffective assistance of trial counsel raised in ground 1 is procedurally barred and that, as to the remainder of Petitioner's habeas claims, he is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d).  See Dkt. # 14.

### *ANALYSIS*

### A.  Exhaustion/Evidentiary hearing

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b).  See Rose v. Lundy, 455 U.S. 509, 510 (1982).  Petitioner presented his claims to the OCCA on direct and post-conviction appeal.  Therefore, he has exhausted state court remedies.

In addition, the Court finds that an evidentiary hearing is not warranted as Petitioner has not met his burden of proving entitlement to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

### B.  Claims adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.[1]  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain

---

[1]Before delving into the arguments supporting his specific habeas corpus claims, Petitioner challenges the constitutionality of the AEDPA. See Dkt. # 9 at 6-8.  He claims that the "deference" provision of 28 U.S.C. § 2254(d) is an intrusion by Congress on the judicial branch of government in violation of the separation of powers doctrine and urges the Court to review his constitutional claims de novo. See id. However, the United States Supreme Court has explained that "[w]hatever 'deference' Congress had in mind . . . , it surely is not a requirement that federal courts actually defer to a state-court application of the federal law that is, in the independent judgment of the federal court, in error." Williams v. Taylor, 529 U.S. 362, 387 (2000). The Court summarized the

federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

To the extent Petitioner's claims are cognizable in this federal habeas corpus proceeding, his claims shall be reviewed pursuant to § 2254(d).

### 1.    Ineffective assistance of trial and appellate counsel (ground 1)

As his first proposition of error, Petitioner alleges that he received ineffective assistance of trial and appellate counsel. See Dkt. # 2. Specifically, Petitioner argues that neither trial nor

---

application of AEDPA review standards as follows: "the statute directs federal courts to attend to every state-court judgment with utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law." Id. at 389. In Harrington v. Richter, 131 S. Ct. 770 (2011), the Court explained that "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. As made clear in Williams and Harrington, habeas corpus review under § 2254(d) does not unconstitutionally mandate that federal courts "defer" to state court decisions on questions of federal law.  Therefore, the Court shall deny Petitioner's request for de novo review and shall apply the § 2254(d) standard to review of Petitioner's constitutional claims.

appellate counsel presented available witnesses or evidence that would have supported Petitioner's

claim that "there were many people in his home that morning, some of whom were armed felons and

were trying to rob him of his safe, that he had been drugged, that the situation was dangerous,

Ashworth realized it, and ended up shooting and killing Adriane Barker *accidentally during a home*

*invasion*." See Dkt. # 9 at 10 (emphasis in original). He also complains that ineffective assistance

of trial counsel resulted in the denial of his constitutional right to testify in his own defense. Id. On

post-conviction appeal, the OCCA first discussed the procedural posture of Petitioner's claims, but

then proceeded to reject Petitioner's claims of ineffective assistance of trial and appellate counsel

on the merits, finding as follows:

> Petitioner presents insufficient evidence to support his claim that either trial or
> appellate counsel was ineffective. The standard to be used in evaluating counsel's
> performance is determined under the general principles enumerated in *Strickland v.*
> *Washington*, 466 U.S. 688, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694 (1984).
> Petitioner must show that counsel's performance was deficient and that the
> deficiency prejudiced him. There is nothing in the appeal record presented to this
> Court indicating that Petitioner's representation at trial or on direct appeal was
> deficient, or that the result in his case would have been different but for counsel's
> alleged ineffective assistance.

(Dkt. # 14, Ex. 10 at 3-4).[2]

### a. Ineffective assistance of trial counsel

To be entitled to habeas corpus relief on his claims of ineffective assistance of trial counsel,

Petitioner must demonstrate that the OCCA's adjudication of the claims was an unreasonable

application of Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a defendant must

show that his counsel's performance was deficient and that the deficient performance was

---

[2]Because the OCCA adjudicated Petitioner's post-conviction claims of ineffective assistance
of trial counsel on the merits, the claims are not procedurally barred, as urged by Respondent, see
Dkt. # 14 at 6-22.

prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993).

A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)).

### i. Decision not to testify

Petitioner claims that his decision not to testify was based on the fact that trial counsel did not plan to call any witnesses to support his defense. As Petitioner recognizes, however, the trial judge made a record regarding Petitioner's decision. See Dkt. # 16-2, Tr. Trans. at 657-58. The trial

judge informed Petitioner that he had the right to testify or not testify, and insured that Petitioner's decision to not testify was voluntary. Id. Trial counsel informed the court that he had discussed the decision "at length" with Petitioner. Id. At no time during the colloquy did Petitioner complain of counsel's representation or in any way give the trial judge reason to think that his decision not to testify was made under duress. Id. The record made by the trial judge establishes that Petitioner's decision to not testify was made voluntarily. Although he later regretted his decision not to testify, see Dkt. # 21, Ex. 1 at ¶¶ 58-59, Petitioner has failed to rebut that conclusion with clear and convincing evidence that his decision was rendered involuntary as a result of ineffective assistance of counsel. See 28 U.S.C. § 2254(e)(1). In addition, the OCCA's rejection of this claim of ineffective assistance of trial counsel was not contrary to Strickland. For those reasons, Petitioner is not entitled to habeas corpus relief on this claim.

### ii. Failure to present a defense

In a related claim, Petitioner also argues that trial counsel provided ineffective assistance for failing to present witnesses to support his arguments that he accidentally shot Adriane Barker as a home invasion was taking place and that he had no knowledge of events surrounding the removal of Barker's body from his house. See Dkt. # 9 at 13-18. In contrast to the State's evidence presented at trial, Petitioner specifically claimed in his application for post-conviction relief, see Dkt. # 21, that he had been drugged the night before the shooting by Adriane so that he would be asleep when the robbers arrived the next morning to steal his safe; that plan was foiled when he woke up, feeling sick and groggy, to find Charlsey Hendrix and Dustin Secrest in his house; that Secrest was armed with a semi-automatic handgun; that the tense situation caused Petitioner to fire his gun reflexively when he heard a noise; and that Adriane Barker walked into the path of that gun shot and died as a result

9

of the accidental shooting.  In his brief in support of his habeas petition, see Dkt. # 9, Petitioner complains that trial counsel failed to call Hendrix as a witness to testify that she was present at the house on the morning of December 8, 2005.  He also identifies witnesses who either had knowledge of a scheme to steal his safe, or were involved in the removal of Barker's body from his house, or could have offered evidence that Petitioner was not involved in removing the body from his house, or were responsible for taking the Pathfinder from Petitioner's garage. Id. The witnesses identified by Petitioner are:  Anthony Bumgarner, Heather Walker, Raul Lopez, Suzette Yvonne Wilson, Erin Mackool, and Chris Helton. Id. Lastly, Petitioner complains that trial counsel failed to introduce phone records demonstrating that his phone was used to make 17 phone calls from midnight until 7:30 a.m. on December 8, 2005, or during the time he was drugged and asleep.  Id.

Upon careful review of the record, the Court finds that even if trial counsel performed deficiently, Petitioner has failed to demonstrate a reasonable probability that the results of the proceeding would have been different but for the deficient performance.  As a result, he has not shown that the OCCA's adjudication of this claim was an unreasonable application of the Strickland standard and he is not entitled to relief under § 2254(d).[3] Significantly, Petitioner does not claim that any of the potential witnesses identified in his application for post-conviction relief was present at the time of the shooting.  Therefore, none of those witnesses could refute the consistent testimony of the three (3) eyewitnesses to the shooting that Petitioner pointed a handgun and a shotgun at Barker's head multiple times before he pointed the handgun at her left temple and shot her at close range, all the while yelling at her to shut up and accusing her of being a liar.

---

[3]The Court would reach the same conclusion even on de novo review. As a result, it is unnecessary to reach Petitioner's claim, as presented in his reply (Dkt. # 19 at 4-5), that § 2254(d)(1) does not apply to his claim.

Furthermore, the information to be provided by the omitted defense witnesses was either cumulative to information presented through other witnesses or irrelevant to the charges filed.  First, Detective Felton testified that on December 21, 2005, he and Detective Regalado interviewed Petitioner after his arrest. See Dkt. # 16-1, Tr. Trans. at 559.  Petitioner was read his <u>Miranda</u>[4] rights and agreed to waive his rights and talk to the detectives. Id. According to Detective Felton, Petitioner admitted shooting Barker, but claimed the shooting was an accident, id. at 560; Petitioner explained that his Pathfinder was missing and he was concerned about safety, id. at 561; Petitioner said he heard a noise and his gun "somehow went off" as Adriane walked in front of him, id.; and Petitioner admitted that he and McIntosh rolled the body up in a large carpet and moved it into the crawl space in the garage, id. at 563. Detective Felton also testified that Petitioner claimed to have returned home later to find that everyone had left, that the body had been removed from the crawlspace, and that he did not know who took the body or what happened to it, id. at 565-66. Thus, Petitioner's defenses that the shooting was an accident and that he was not involved in removing the body from the crawl space were presented to the jury through Detective Felton's testimony.

In addition, the record demonstrates that Steve McIntosh did in fact testify that two (2) other people came into the house that morning, then exited. See Dkt. # 16-1, Tr. Trans. at 413, 417-18. After they left, McIntosh observed that the previously empty garage now housed a "little pickup." Id. at 413. In addition, McIntosh testified, on cross-examination by defense counsel, that Petitioner had been robbed before, see Dkt. # 16-1, Tr. Trans. at 465, supporting Petitioner's explanation for his agitation and concern for safety. Even if Bumgarner had been called to testify that a plan to steal

---

[4]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) (finding that statements made by a defendant during custodial interrogation could not be used at trial unless the defendant was first advised of his right to remain silent, his right to an attorney, and that his statements may be used against him).

Petitioner's safe existed, as allegedly evidenced by the purported phone records from Petitioner's cell phone, that testimony would have supplemented other testimony already before the jury that Petitioner was agitated, but it would not have shed light on the circumstances as they existed at the moment Petitioner shot and killed Barker. Furthermore, Deborah Bowline told the jury, during cross-examination by defense counsel, that Barker had given the keys to the Pathfinder to someone who came to the house earlier that morning and, thus, played a role in the removal of the Pathfinder from Petitioner's garage see Dkt. # 16-1, Tr. Trans. at 391. Therefore, the anticipated testimony of Hendrix, Bumgarner, Mackool, and Helton, as set forth by Petitioner,[5] was cumulative to evidence already before the jury and does not create a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different.

Lastly, the charge of Unlawful Removal of a Dead Body was based on Petitioner's removal of Barker's body from the place where she was shot inside the house to the crawlspace in the garage. See Dkt. # 16-1, Tr. Trans. at 326. Petitioner admitted to Detective Felton, id. at 563, that he was involved in moving the body to the crawlspace. Thus, the anticipated testimony of Heather Walker, Raul Lopez, and Suzette Yvonne Wilson concerning their roles and Petitioner's role in the removal of the body from the crawlspace and its disposal would not have created a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different as to Petitioner's conviction of Unlawful Removal of a Dead Body.

---

[5]The Court also notes that Hendrix testified as a witness for the State at Petitioner's preliminary hearing.  See Dkt. # 21, Ex. 2. Her testimony provided a factual basis for the Kidnapping charge of which Petitioner was acquitted by the jury. Id. at 103-09.  Thus, defense counsel clearly had a strategic reason for not calling Hendrix as a witness for the defense.

In summary, in light of the evidence presented at trial, it was an objectively reasonable strategic decision by trial counsel to not call Hendrix, Bumgarner, Walker, Lopez, Wilson, Mackool, and Helton as witnesses for the defense. Boyle v. McKune, 544 F.3d 1132, 1139 (10th Cir. 2008) ("[T]he decision of which witnesses to call is quintessentially a matter of strategy."); Boyd v. Ward, 179 F.3d 904, 915 (10th Cir. 1999) (describing decisions regarding impeaching witnesses and introducing evidence as matters of "trial strategy and tactics"); see also Strickland, 466 U.S. at 699. Petitioner has not demonstrated that the OCCA's adjudication of his post-conviction claim of ineffective assistance of trial counsel "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). He is not entitled to habeas corpus relief on this claim.

### b. Ineffective assistance of appellate counsel

When assessing claims of ineffective assistance of appellate counsel, this Court applies the Strickland two-pronged standard used for general claims of ineffective assistance of trial counsel. See United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995), abrogated on other grounds by Neill v. Gibson, 278 F.3d 1044 (10th Cir. 2001). When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999). "If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its

omission; of course, if the issue is meritless, its omission will not constitute deficient performance." Cargle, 317 F.3d 1196, 1202 (10th Cir. 2003) (citation and footnote omitted); see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998) (citing Cook, 45 F.3d at 392-93).

In his first proposition of error, Petitioner claims that appellate counsel provided ineffective assistance in failing to argue that Petitioner had been denied his right to present a defense. However, as discussed above, Petitioner has failed to demonstrate a reasonable probability that the result of his trial would have been different had the witnesses and evidence identified by Petitioner been presented at trial. Strickland, 466 U.S. at 694. For that same reason, Petitioner cannot satisfy the prejudice prong of the standard applicable to his ineffective assistance of appellate counsel claim. Cargle, 317 F.3d at 1202. Petitioner has failed to demonstrate that the OCCA's rejection of his claim of ineffective assistance of appellate counsel "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). He is not entitled to habeas corpus relief on this claim.

### 2. Insufficient evidence supported conviction of First Degree Murder (ground 2)

As his second ground of error, Petitioner complains that the State failed to present evidence sufficient to prove beyond a reasonable doubt that Ashworth shot Barker intentionally and with premeditation. See Dkt. # 2. Petitioner raised this claim on direct appeal. Citing Spuehler v. State, 709 P.2d 202, 204-05 (Okla. Crim. App. 1985) (quoting Jackson v. Virginia, 443 U.S. 307 (1979)), the OCCA denied relief, finding as follows:

> In evaluating its sufficiency, this Court considers evidence in a light most favorable to the State to determine whether "any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." The evidence was sufficient to convict Ashworth.

> Viewed through a light favorable to the State, the evidence established that an angry, raging Ashworth intentionally shot Barker in the head and killed her. The testimony of the three eyewitnesses coupled with Ashworth's post-shooting attempt to conceal his crime could easily lead a rational trier of fact to find his intent to kill. Moreover, none of the alleged errors raised in his brief individually or cumulatively would have affected the jury's verdict. Simply stated, the evidence overwhelmingly establishes Ashworth's guilt of first degree murder.

(Dkt. # 14, Ex. 5 at 2-3 (footnotes omitted)).

In a habeas proceeding, the Court reviews the sufficiency of the evidence "in the light most favorable to the prosecution" and asks whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "This standard of review respects the jury's responsibility to weigh the evidence and to draw reasonable inferences from the testimony presented at trial." Dockins v. Hines, 374 F.3d 935, 939 (10th Cir. 2004) (citing Jackson, 443 U.S. at 319). In other words, it "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." Jackson, 443 U.S. at 319.

Upon review of the evidence in the light most favorable to the prosecution, the Court finds that sufficient evidence supported the conviction of First Degree Murder. To convict Petitioner of this crime, the State had to prove beyond a reasonable doubt that Petitioner killed Barker with malice aforethought, or with a "deliberate intent to kill." See Okla. Stat. tit. 21, § 701.7(A) (2004). Under Oklahoma law, the intent to kill may be formed in the instant before the act is carried out. Black v. State, 21 P.3d 1047, 1062 (Okla. Crim. App. 2001). In addition, "[p]remeditated design sufficient to establish malice aforethought may be inferred from the fact of killing alone, unless the facts and circumstances raise a reasonable doubt as to whether such design existed." Hancock v. State, 155 P.3d 796, 812 (Okla. Crim. App. 2007). As discussed above, three (3) eyewitnesses

testified that Petitioner was in a rage, yelling at Barker to shut up and accusing her of lying, and that, after pointing both a shotgun and a handgun several times at Barker's head, Petitioner aimed the handgun at her left temple and pulled the trigger. See Dkt. # 16-1, Tr. Trans. at 371-72, 374, 392, 422, 431-32, 473, 491-93. In addition, after shooting Barker, Petitioner made no effort to check for a pulse or to seek medical attention for her. Id. at 378. He then proceeded to hide the body in the crawlspace under his house and paid to have the body hauled off and disposed of. Id. 448. The Court finds that the evidence, viewed "in the light most favorable to the prosecution," was sufficient for "any rational trier of fact" to have found the essential elements of First Degree Murder beyond a reasonable doubt.

The Court concludes that the OCCA's resolution of Petitioner's challenge to the sufficiency of the evidence was not contrary to, or an unreasonable application of, federal law, 28 U.S.C. § 2254(d)(1). Nor was it an unreasonable determination of the facts, 28 U.S.C. § 2254(d)(2). See Dockins, 374 F.3d at 939 (recognizing that the Tenth Circuit has yet to decide whether sufficiency of the evidence on habeas review presents a question of law or fact). Petitioner is not entitled to habeas corpus relief on his ground two proposition of error.

**3. Erroneous jury instructions (ground 3)**

As his third proposition of error, Petitioner alleges that erroneous jury instructions deprived him of a fair trial. See Dkt. # 9. Specifically, he complains that (1) the instruction on Second Degree Murder was confusing, (2) the instructions for determining punishment were contradictory, and (3) the trial court failed to issue both an instruction regarding consideration of external circumstances surrounding the shooting and an accomplice corroboration instruction. On direct

appeal, the OCCA reviewed each of Petitioner's specific complaints for plain error and concluded that:

> Although there is some merit to Ashworth's claims, none were plain error as they did not deny him a fair trial. Moreover, even under the more onerous "harmless error" standard of review, Ashworth cannot establish prejudice. The jury instantly convicted Ashworth of two crimes not because of any potential instructional error but rather because the evidence overwhelmingly supported the convictions. Without harm, there can be no relief.

(Dkt. # 14, Ex. 5 at 6).

"As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977))); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."). The Tenth Circuit Court of Appeals has found "no practical distinction" between the formulations of plain error used by the OCCA and the federal due-process test, requiring reversal when an error "so infused the trial with unfairness as to deny due process of law." Thornburg v. Mullin, 422 F.3d 1113, 1125 (10th Cir. 2005) (quoting Estelle v. McGuire, 502 U.S. 62, 75 (1991)). Because the OCCA applied the same test required for a due process determination, this Court defers to its ruling unless it "unreasonably appli[ed]" that test. Id. (citing 28 U.S.C. § 2254(d)). A proceeding is fundamentally unfair under the Due Process Clause if it is "shocking to the universal sense of justice." United States v. Russell, 411 U.S. 423, 432 (1973).

Upon careful review of the record, including the instructions issued by the trial court, see Dkt. # 14, Ex. 13, the Court finds that the state court's instructions to the jury did not deprive Petitioner of fundamental fairness or violate due process. See Kibbe, 431 U.S. at 155. The OCCA's decision was not an unreasonable application of Supreme Court law, or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d); Thornburg, 422 F.3d at 1125.  Petitioner is not entitled to habeas corpus relief on ground three.

### 4. Ineffective assistance of trial counsel (ground 4)

As his fourth ground of error, Petitioner raises another claim of ineffective assistance of trial counsel. See Dkt. # 2. Petitioner claims that trial counsel provided ineffective assistance in failing to move for suppression of the contents of Petitioner's briefcase.  This claim was raised on direct appeal where it was rejected by the OCCA. Citing Selsor v. State, 2 P.3d 344, 354 (Okla. Crim. App. 2000), and Hooks v. State, 19 P.3d 294, 317 (Okla. Crim. App. 2001), the OCCA ruled as follows:

> Ashworth's claims are primarily based upon Detective Regaldo's [sic] allegedly false testimony about where he seized Ashworth's briefcase, which contained self-incriminating handwritten notes. Detective Regaldo [sic] testified that it was in Ashworth's hand at the time of his arrest. In this proposition, the Application for Evidentiary Hearing, and the Motion for New Trial, Ashworth submits evidence that the briefcase was actually in the trunk of the car he had just exited at the time of his arrest. Ashworth claims that the search was thus, illegal and that the notes should have been suppressed.

> Even if Ashworth's claims are correct and the notes should have been suppressed, he cannot establish prejudice under either the ineffective assistance of counsel or motion for new trial standard. The notes were secondary and cumulative to the massive amount of evidence establishing his guilt. The notes had no effect on either his conviction or sentence. Ashworth was convicted based upon the trial testimony of the eyewitnesses to the initial murder and the subsequent cover up. As a result, we find that the exclusion of the notes would not have changed or affected the outcome of Ashworth's trial.

> Additionally, Ashworth's claims that trial counsel's failure to (1) request admission of a diagram of the crime scene into evidence, (2) object to or request

18

instructions, and (3) object to prosecutorial misconduct were also not prejudicial. They had absolutely no effect on the outcome of the trial. This Proposition, the Application for Evidentiary Hearing and the Motion for New Trial are denied.

(Dkt. # 14, Ex. 5 at 6-7 (footnotes omitted)).

Although the OCCA did not specifically cite <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), for the standard applicable to analyzing ineffective assistance of counsel claims, the standard used by the state appellate court mirrored the <u>Strickland</u> standard: a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. <u>Strickland</u>, 466 U.S. at 687. Therefore, to be entitled to habeas corpus relief on this claim of ineffective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim was an unreasonable application of <u>Strickland</u>, 466 U.S. at 687.

The Court agrees with the OCCA's conclusion that, in light of the evidence presented at trial, Petitioner cannot satisfy the prejudice prong of the <u>Strickland</u> standard. Even if trial counsel performed deficiently in failing to argue for suppression of the contents of the briefcase, Petitioner cannot demonstrate a reasonable probability that the result of his trial would have been different had the notes written by Petitioner been suppressed. Therefore, Petitioner has not shown that the OCCA's adjudication of this claim of ineffective assistance of trial counsel was an unreasonable application of <u>Strickland</u>. 28 U.S.C. § 2254(d). He is not entitled to habeas corpus relief on this claim.

### 5. Prosecutorial misconduct (ground 5)

In ground 5 of his habeas petition, Petitioner argues that he was deprived of his right to a fundamentally fair trial by prosecutorial misconduct. <u>See</u> Dkt. # 2. In his supporting brief, Petitioner cites to two (2) specific instances of alleged misconduct: (1) the prosecutor presented a "key fact that

he knew to be false," and (2) the prosecutor improperly vouched for the credibility of Barnes.  See

Dkt. # 9 at 34-35. In rejecting these claims on direct appeal, the OCCA stated as follows:

> Ashworth first claims that the prosecutor misstated the evidence when he argued that Renee Barnes saw Ashworth pull the hammer back before he shot Barker. At a minimum, this exaggerates the testimony; at most, it is error. Either way, the problem was slight and bore no effect on the verdict or sentence as Ashworth was seen by three eyewitnesses shooting Barker in the head. This argument is denied.

> Second, Ashworth argues that the prosecutor improperly vouched for the credibility of Barnes, by stating that with her, "what you see is what you get." This was a fair argument. The prosecutor was not vouching for Barnes but merely suggesting to the jury that based upon her demeanor, she was a credible witness. This argument is denied.

> \* \* \* \*

> In short, any misconduct that may have occurred at Ashworth's trial was insignificant in light of the evidence. The statements were not prejudicial nor did any contribute to the jury's verdict or sentence. This proposition is denied.

(Dkt. # 14, Ex. 5 at 8-9).

Where prosecutorial misconduct does not implicate a specific constitutional right, improper

remarks require reversal of a state conviction only if the remarks "so infected the trial with

unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo,

416 U.S. 637, 643 (1974).  "[I]t is not enough that the prosecutors' remarks were undesirable or even

universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks

omitted). The ultimate question is whether the jury was able to fairly judge the evidence in light of

the prosecutors' conduct. Bland v. Sirmons, 459 F.3d 999, 1024 (10th Cir. 2006). "To view the

prosecutor's [conduct] in context, we look first at the strength of the evidence against the defendant

and decide whether the prosecutor's [conduct] plausibly could have tipped the scales in favor of the

prosecution." Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); see also

Smallwood v. Gibson, 191 F.3d 1257, 1275-76 (10th Cir. 1999).

The Court agrees with the OCCA that, in light of all the evidence presented at trial, even if the prosecutor's comments concerning Barnes' testimony were improper, Petitioner has failed to show that they were significant enough to influence the jury's decision. See Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998). As a result, Petitioner has failed to demonstrate a reasonable probability that the outcome of his trial would have been different without the alleged misconduct. See Hoxsie v. Kerby, 108 F.3d 1239, 1244-45 (10th Cir. 1997). Upon review of the trial transcript, this Court finds that the OCCA's rejection of this claim was not an unreasonable application of constitutional law. Petitioner is not entitled to habeas corpus relief on his ground five claim.

### 6. Cumulative error (ground 6)

In his final proposition of error, Petitioner claims that multiple errors at trial accumulated to deprive him of a fundamentally fair trial. See Dkt. # 9 at 36. The OCCA adjudicated this claim on direct appeal and found as follows:

> While there may have been individual errors in Ashworth's trial, none either individually or in the aggregate were prejudicial, and thus none affected or contributed to the outcome of the case or denied him a fair trial.

(Dkt. # 14, Ex. 5 at 9 (footnote omitted)). In a footnote, the OCCA further explained that "[e]ven assuming that all the errors alleged by Ashworth had merit, he never (and indeed, probably cannot) establishes [sic] prejudice under any standard based upon the evidence properly admitted at trial." Id. at n.17.

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000)

(quotation omitted). Cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing Rivera, 900 F.2d at 1471). In this case, the Court did not find two or more actual errors. As a result, there is no basis for a cumulative error analysis. Therefore, Petitioner has failed to demonstrate that the OCCA's rejection of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d).

## CONCLUSION

After careful review of the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

## Certificate of appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's

application of AEDPA standards to the decisions by the OCCA was debatable amongst jurists of reason.  See Dockins v. Hines, 374 F.3d 935 (10th Cir. 2004).  The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that** the petition for a writ of habeas corpus (Dkt. # 2) is **denied**. A separate judgment shall be entered in this matter.  A certificate of appealability is **denied**.

**SO ORDERED** this 16th day of July, 2013.

TERENCE C. KERN
UNITED STATES DISTRICT JUDGE